UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS OF<br>S2 ENERGY OPERATING, LLC<br><br>VERSUS<br><br>BARRY SALSBURY, BENJAMAN<br>STAMETS, JARED POWELL, &<br>FEDERAL INSURANCE COMPANY | CIVIL ACTION<br><br>NO. 25-300<br><br>SECTION L (3) |

## ORDER & REASONS

Before the Court is a Motion to Remand filed by Plaintiff, the Official Committee of Unsecured Creditors of S2 Energy Operating. R. Doc. 11. Defendant Federal Insurance Company opposes the motion. R. Doc. 12. Plaintiff replied. R. Doc. 13. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I. **BACKGROUND**

This suit arises out of Defendants' alleged breaches of their fiduciary duties to S2 Energy Operating, LLC ("S2"), which is now in Chapter 11 bankruptcy. R. Doc. 1-5 at 2. Plaintiff alleges that S2 was part of a network of LLCs, collectively known as "Krewe Energy," which were "engaged in exploration and production of oil and gas in waters adjacent to Louisiana." R. Doc. 1-5 at 3. In particular, S2 acted as a "contract operator" and was responsible for securing goods and services for production, securing work orders, collecting revenue from oil and gas sales, and paying royalties to lessors of oil and gas leases. *Id.* at 4-5. Plaintiff alleges that three entities collectively own a 98.527% membership interest in S2: Defendant Barry Salsbury, Sage Road Energy 1, LP (owned by Sage Road Capital) and CRC Krewe (owned by Coral Reef Capital). Plaintiff alleges that Defendant Barry Salsbury was the managing member of S2. It further alleges that Defendant

1

Benjaman Stamets, who is affiliated with Sage Road Capital, and Defendant Jared Powell, who is affiliated with Coral Reef Capital, were directors or managers of S2. *Id.* at 5.

Plaintiff alleges that following Hurricane Ida, Krewe Energy experienced a "steep decline in production and revenues generated in oil and gas sales" and that accordingly, "S2 did not have working capital available to pay operating expenses, taxes, and royalties." *Id.* at 6. Plaintiffs allege that given this poor financial situation, Defendants Salsbury, Stamets, and Powell "should have caused S2 to seek relief under the Bankruptcy Code or otherwise sought to restructure S2's finances." However, Plaintiff alleges that filing for bankruptcy "would have resulted in Coral Reef Capital and Sage Road Capital being required to recognize a loss on their respective investments in S2 and Krewe Energy." *Id.* at 8. Accordingly, Plaintiff avers that to protect the interests of Coral Reef Capital and Sage Road Capital, Defendants used "trade credits" and "diverted funds due to lessors and taxing authorities" to unsustainably continue S2's operations and pay insiders. *Id.* Plaintiff avers that Defendants knew or should have known that such decisions "would cause S2 to become hopelessly insolvent and unable to continue." *Id.*

Plaintiff alleges that indeed, S2 finally exhausted all funds, and that Defendants finally placed it into bankruptcy on January 16, 2023. *Id.* at 6. At that time, Plaintiff alleges that S2 had a negative net worth of $18,342,198.00. *Id.* The bankruptcy proceeding is currently pending before the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 2. Plaintiff itself is the "Official Committee of Unsecured Creditors" of S2, established in connection with the bankruptcy case. *Id.*

Plaintiff brings the instant suit against Defendants Salsbury, Stamets and Powell for breach of fiduciary duty. *Id.* at 9. Specifically, Plaintiff alleges that these Defendants breached their duties of care and loyalty by abdicating their duty to insure proper financial controls and accounting systems were implemented, incurring additional operating expenses and other obligations which they know or should have known could not be paid, failing to inform vendors and other trade creditors that S2

could not pay debts owed to them, permitting funds dedicated to lessors/royalty owners and tax authorities to be diverted, and sacrificing the interests of S2 and its creditors to the interests of Sage Road Capital and Coral Reef Capital. *Id.* at 10. Furthermore, Plaintiff also brings a direct action suit against Defendant Federal Insurance Company ('FIC"), which it alleges issued a policy of Officers and Directors Liability Coverage to Defendants. *Id.*

Plaintiff originally filed the suit in the 32nd Judicial District Court for the Parish of Terrebonne ("the 32nd JDC"). *Id.* at 1. FIC thereafter removed the suit to this Court, invoking 28 U.S.C. § 1334(b), which grants district courts jurisdiction over cases "related to" title 11 bankruptcy proceedings. R. Doc. 1 at 4.

## II. PRESENT MOTION

Plaintiff moves to remand the suit to the 32nd JDC. R. Doc. 11. It concedes that this Court possesses "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). R. Doc 11-1 at 6. However, it avers that nevertheless, the "mandatory abstention" doctrine of 28 U.S.C. § 1334(c)(2) requires remand because: (1) there is no independent basis for federal jurisdiction, (2) Plaintiff's state-law breach of fiduciary duty suit is not a "core" bankruptcy proceeding, (3) Plaintiff commenced the suit in state court, and (4) the action could be timely adjudicated in the 32nd JDC. *Id.* at 6. Alternatively, Plaintiffs argue that even if mandatory abstention does not apply, the Court should decline to hear the suit under the doctrines of "permissive abstention" and "equitable remand." *Id.* at 9-10.

Defendant opposes the motion. R. Doc. 12. It avers that mandatory abstention does not apply to require remand because (1) Plaintiff's suit is in fact a "core" bankruptcy proceeding, and (2) Plaintiff has not sufficiently demonstrated that the 32nd JDC would timely adjudicate the suit. *Id.* at 5-10. Further, it avers that neither permissive abstention nor equitable remand are warranted in this case. *Id.* at 11-14.

## III. LAW & ANALYSIS

The parties dispute whether mandatory abstention, permissive abstention, and equitable remand apply to require remand of this case. Because the issue of mandatory abstention is dispositive, the Court addresses it first.

Title 28 U.S.C. § 1334(b) provides district courts with a broad grant of jurisdiction to hear cases "related to" title 11 bankruptcy proceedings. However, § 1334(c)(2) effectively limits this jurisdiction by way of a "mandatory abstention" provision. This section states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Accordingly, the Fifth Circuit has "interpreted this provision to mandate federal court abstention where (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (internal quotations omitted).

Here, the parties agree that the first and third elements are met because this Court has no independent basis for jurisdiction and Plaintiff commenced the action in state court. However, they dispute the second and fourth elements of mandatory abstention: whether the proceeding is "core" and whether it could be timely adjudicated in the 32nd JDC. The Court takes each in turn.

### A. This Case is *Not* a "Core" Bankruptcy Proceeding.

The mandatory abstention doctrine does not apply to require remand where the suit at issue is a "core" bankruptcy proceeding. *See TXNB*, 483 F.3d at 300. The Bankruptcy Code does not define the term "core proceeding," but does provide an illustrative list of core proceedings which includes

4

the following: "(A) matters concerning the administration of the estate; . . . (H) proceedings to determine, avoid, or recover fraudulent conveyances; and . . . (O) other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2).

Although this list appears rather sweeping, the Fifth Circuit has defined a "core" proceeding more narrowly. It holds that a proceeding is "core" only "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987). That is, a proceeding is not core if it "is based on state-created rights," rather than "any right created by the federal bankruptcy law" and where it could "arise" outside the bankruptcy context. *Id.* Accordingly, although a proceeding may appear to meet the definition of a core proceeding under the examples listed in § 157(b)(2) of the bankruptcy code, it must be further analyzed under the Fifth Circuit's more exacting test.

In the instant suit, Plaintiff brings only two causes of action: (1) a state-law claim for breach of fiduciary duty against Salsbury, Stamets, and Powell, and (2) a corresponding direct action claim against FIC seeking to hold it liable for such breaches of fiduciary duty. Overall, the Court finds that these claims are not core. Plaintiff's claims rely exclusively on Louisiana law and are therefore not based on "rights created by the federal bankruptcy law." *Id.* Nor could the claims "arise only in the context of bankruptcy" because breach of fiduciary duty suits can be brought where no bankruptcy is involved. *Id.* Accordingly, Plaintiff's claims do not meet the Fifth Circuit's definition of a 'core' proceeding. *See Wash. Mut., Inc. v. XL Specialty Ins. Co.*, No. 08-12229, 2012 WL 4755209, at *2 (Bankr. D. Del. Oct. 4, 2012) (applying the same standard and finding that "breach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case"); *In re White*, 172 B.R. 841, 844 (S.D. Miss. 1994) (holding that the plaintiff-debtor's breach of fiduciary duty claim against the debtor's former lawyers was "appropriately classified as 'non-core.'").

Defendant's arguments in opposition of this holding are unavailing. First, it argues that Plaintiff's suit is "core" because is meets examples (A) and (O) of § 157(b)(2), that is, the suit "concern[s] the administration of the estate" and "affect[s] liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2). R. Doc. 12 at 7-8. However, as explained below, the Fifth Circuit defines "core" more narrowly than the examples laid out in § 157(b)(2), by additionally requiring that the claim arise from bankruptcy law or arise exclusively in bankruptcy cases. *Wood*, 825 F.2d at 97. As already explained above, Plaintiff's suit fails to meet this narrower definition and therefore cannot be deemed "core" based on the § 157(b)(2) factors alone. *See In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 875 (E.D. La. 2011) ("Notwithstanding its literal breadth, the Fifth Circuit has declined to give a broad reading to Subsection (O), because to do so would make the entire range of proceedings within bankruptcy jurisdiction fall within the scope of a 'core proceeding,' which is contrary to legislative intent."); *In re Drs. Hosp. 1997, L.P.*, 351 B.R. 813, 865 (Bankr. S.D. Tex. 2006) ("The Fifth Circuit warns against a broad interpretation of 28 U.S.C. § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O).").

Next, Defendant argues that Plaintiff's state-court breach of fiduciary duty claim is actually a "fraudulent conveyance" claim in disguise. R. Doc. 12 at 5. It avers that a claim for a fraudulent conveyance is listed as a core proceeding under § 157(b)(2)(H). *Id.* Further, it alleges that fraudulent conveyance claims arise from "rights created by the federal bankruptcy law" because they are based in § 548 of the bankruptcy code, which gives creditors a right to sue bankruptcy debtors for certain wrongful transfers. *Wood*, 825 F.2d at 97. Thus, Defendant urges that Plaintiff's claims, properly characterized as fraudulent conveyance claims, can meet the Fifth Circuit's narrower test for a core proceeding. R. Doc. 12 at 5. And, it argues that although Plaintiff has only brought a claim for state-law breach of fiduciary duty, "[a]t their core, Plaintiff's allegations demonstrate that it seeks to

6

recover amounts that were intentionally transferred by S2's director's and managers to an 'insider of S2' in an attempt to obstruct, delay, or defraud creditors." *Id.* Therefore, Defendant argues, "these allegations constitute fraudulent conveyance claims." *Id.*

The problem with this argument, however, is that Plaintiff has *not* elected to bring a fraudulent conveyance claim. And, courts within this Circuit have already refused to unilaterally convert a plaintiff's state-law breach of fiduciary duty claim into a bankruptcy-law fraudulent transfer suit. For example, in *Schmidt v. Nordlicht*, a bankruptcy litigation trustee brought a breach of fiduciary duty claim against the debtor's former operator, which it alleged had undertaken "a series of improper financial transactions" which drove the debtor into bankruptcy. No. 16-3614, 2017 WL 526017, at *1 (S.D. Tex. Feb. 9, 2017). The court *rejected* defendants' argument that the plaintiff's state-law suit was "the functional equivalent of an action to undo a fraudulent transfer." It explained:

> A bankruptcy-law claim for fraudulent conveyance has different elements and different proofs than a claim for, in this instance, Texas state-law . . . breach of fiduciary duty, and the like. The fact that the damages arose from an improper financial transaction does not mean that any action to recover those damages morphs into an action to undo a fraudulent conveyance under title 11.

*Id.* Accordingly, the Court rejected the defendant's invitation to construe the plaintiff's state law-claims as bankruptcy fraudulent conveyance claims in clear contravention of the theories of relief laid out in the complaint. *Id.*

The Court agrees with the court's analysis in *Schmidt*. Plaintiff's Petition expressly brings *only* a state-law breach of fiduciary duty claim against Salsbury, Stamets, and Powell and a corresponding direct action suit against their alleged insurer, FIC. Plaintiff itself confirms that it "does not assert any fraudulent conveyance claims" and, indeed, has not plead the required elements of fraudulent conveyance such as the defendant's receipt of "inadequate consideration" for a transfer.

7

R. Doc. 13 at 1, 5. Accordingly, the Court finds that Plaintiff has brought only a state-law breach of fiduciary duty claim which is non-core and thus supports mandatory abstention.

### B. This Case Can Be Timely Adjudicated in State Court.

Next, Defendant argues that Plaintiff has failed to demonstrate that this case could be timely adjudicated by the 32nd JDC. R. Doc. 12 at 10. Here, the Court again finds *Schmidt* instructive:

> The argument that the action cannot be timely adjudicated in state court is meritless. There is no realistic reason to believe that the [state] court from which this action was removed would fail to address this litigation on a reasonably timely basis, which is all that is required.

2017 WL 526017, at *4. Similarly, Plaintiff asserts that there is no impediment to this case proceeding timely in state court. R. Doc. 13 at 6. Defendant offers no evidence to rebut Plaintiff's allegation or to suggest that the 32nd JDC has a lengthy backlog or is otherwise inefficient in managing its docket. Although Defendant alleges that the suit will be complex, it appears to the Court to be a fairly straightforward breach of fiduciary duty suit. Accordingly, the Court refuses to merely assume that the 32nd JDC is unable to timely adjudicate this case.

### IV. CONCLUSION

Overall, the Court thus finds that all four elements of mandatory abstention are met: (1) Plaintiff's claim has no independent basis for federal jurisdiction, (2) the claim is a state-law breach of fiduciary duty suit and thus not a "core proceeding," (3) an action has been commenced in the 32nd JDC, and (4) the action could be timely adjudicated in that court. *In re TXNB*, 483 F.3d at 300. Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion to remand the instant case is **GRANTED.**

New Orleans, Louisiana on this 13th day of May, 2025.

_____<br>
Honorable Eldon E. Fallon